Our final case for argument today is United States v. Galvan, Appeal No. 21-2771. We will again be hearing from Mr. Tolliver for the defendant and Mr. Wrights for the government. Good morning, Your Honor. May it please the Court. Again, my name is Terry Tolliver and I'm here representing Nain Galvan. We're here today for two reasons. One, that there was not a finding in this case that the firearm that was used in the robbery was the same. And that there was no evidence that the firearm was discharged during the robbery. On the first question, was there ever any mention in the pre-sentence report or the sentencing hearing about any firearm other than the Smith & Wesson? Your Honor, our review of the record makes it appear as though there was a finding that a robbery had occurred but there was nothing specific about the firearm that was used. There is a reference at 1.2, quote, that gun, end quote. That would be referring to a firearm and the only firearm I think that's been mentioned was the Smith & Wesson. Your Honor, under section 2K2.1C1, we read that there has to be a finding that the same firearm was used both during the robbery and at the time Mr. Galvan was arrested for possession of the firearm. Let me just raise a very fundamental problem I have with this, Mr. Tolliver. As I understand it, the defense argument here, on appeal at least, is that the defendant had a second gun that night and used that gun in robbing Gomez, right? I think the argument, Your Honor, is that there's never been a finding that it's the same gun. Well, then the hypothesis is there was a second gun, right? That could be one possible explanation. It's a hypothesis that was never presented to the district court, right? Your Honor, I don't think we get to that point because the way the commentary reads that there needs to be a specific finding that this gun was the one that was used here and that was never done. We usually don't expect judges to dwell on issues that are not contested, right? Correct, Your Honor. And this was not an issue raised. At best, you're on plain error review here. And if the hypothesis is there was a second gun, that has to be your hypothesis, right? No, again, I don't think we need to get to that point. I think the argument is that… Indulge me for a moment. That is the theory, correct? That is a theory, Your Honor. And I have a great deal of difficulty understanding how Mr. Galvin's possession of a second illegal firearm that night could possibly be deemed a mitigating factor. Your Honor, when we're looking at an enhancement, I think that the court should take the additional step to make the determination as to whether this was the gun that was used. That's what the commentary suggests. And here, there was a significant enhancement to Mr. Galvin's sentence as a result of that. And then the next thing is that even if the court disagrees and believes that enhancement was proper, it should have been a six-level adjustment as opposed to seven because the way the facts were presented to the court, there was no evidence that the firearm was discharged during the commission of the robbery. But during is a term that we've used in our cases as shorthand for in connection with, I believe. The way I understand it, the guideline says in connection with. We, in cases, have shortened that to say during. But certainly not with the intention to decide there's a finite starting point to the robbery and a finite ending point to the robbery. I mean, that would be nearly impossible. And here, would you concede, or maybe you wouldn't, would you concede that if the actual law required that the firearm only be used in connection with, that this firearm was used in connection with the robbery? Your Honor, we would not concede that. And the government raised that in its brief about things of doing and not doing. I wonder, like a bank robbery situation. You know, if a bank robber goes into the bank and fires a gun in the air and then says, I'm here to rob the bank. Everybody get down. Does the bank robbery only commence once he says, I'm here to rob the bank. Everybody get down. And he didn't actually fire the gun during the commission of the robbery? That would seem totally absurd to me. Based on your example, we would agree. I think the more appropriate hypothetical is that if that bank robber took the gun and fired several shots into the ground, then went into the bank and said, I'm here to rob the bank. There's a question as to whether the shooting or the firing of the gun is in connection with the bank robbery. That's a good hypothetical. What if he did it after the robbery? So he commits the robbery. He goes outside. He shoots the gun up in the air a couple of times. Everybody hits the ground, right? And he runs away. Would he have shot the gun after the commission of the robbery? Because, again, that seems a little absurd to me. Maybe it's not. Well, that would be after the robbery had occurred. I guess we'd have to see how hard that would be to determine. I think that's why the loss is in connection with as opposed to during. Because, boy, this would be tough to do. Not to mention how the victim would draw such a distinction. With the gun first fired and then pointed at him. But here, the facts, the victim was with Mr. Galvan when they were test firing the gun. And the robbery was alleged to have occurred later. So it's not a typical car accident. I understand that's his theory. Right? Yes, Your Honor. Okay. And those were the firings in the backyard before they moved to the front, is that right? I believe that is correct, Your Honor. Anybody check to see whether the gun he was arrested with had been fired? I believe that it was. But I do not recall it, Your Honor. And it was empty at the time he was arrested, right? Yes. Okay. Your Honor, I had reserved some time for rebuttal. All right. Thank you very much, Mr. Tolliver. Thank you, Your Honor. Mr. Reitz. May it please the Court, Brian Reitz for the United States. On the first, the use of the same gun, we think that's waived. And, Judge Hamilton, we think your point actually supports the waiver because it shows a strategic reason for Mr. Galvan not to raise this claim here. Not only did he say, did he admit that he was not challenging whether it was that gun, but not bringing up the fact that he may have committed multiple crimes using multiple guns was, of course, would have been taken by the judge as an aggravating factor. So we think that strategic reason not to raise that argument supports our waiver argument. Second, in connection with the robbery, first of all, the guidelines text in connection I think is much broader than Mr. Galvan is saying. Even if it was just during the elements, certainly the victim perspective is important here. The victim testified that the firing of the gun was part of his fear. Robbery requires, one of the elements of robbery is placing a victim in fear or threatening force. And the victim's fear here certainly started as he testified when Mr. Galvan fired the gun. So it's inseparable from the elements of the crime, even if we were just doing this deering approach. The Court has no further questions. Can you enlighten us about whether the gun he was arrested with was checked for firing? I'm actually not sure about that, but it was empty, which is consistent with it being the same gun. With that, I'll raise the Court to affirm. Thank you, Mr. Riggs. Mr. Tolliver, rebuttal. Mm-hmm. Your Honor, the reason we're here today again is because we believe that these enhancements resulted in Mr. Galvan serving a significantly longer sentence than he otherwise would have. And what we're asking is that this Court remand this matter back to the District Court for a re-sentence consistent with the appropriate guidelines. Could I ask you, on this theory that Mr. Galvan formed the intent to take the truck to carry out this robbery, that he formed this intent after firing the gun in the backyard, is there any evidence that actually supports that? Did he ever testify to that? I don't believe so, Your Honor. Okay. Okay. Thank you very much, Mr. Tolliver. Thank you, Your Honor. The case will be taken under advisement with thanks to both counsel. And with that, the Court is concluded with today's arguments. We'll be in recess under the Court's calendar. Again, our thanks to all counsel.